# Exhibit 5

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

-------------------------------------------------------------------------x

CARINGONDEMAND, LLC and
AVIOR SCIENCES, LLC,                                          Case No.:

Plaintiffs,

- against -

VENTIVE LLC,

Defendant.

-------------------------------------------------------------------------x

## COMPLAINT

Pursuant to 9 U.S.C. §4, Plaintiffs, CaringOnDemand, LLC ("Caring") and Avior Sciences,

LLC ("Avior") (collectively the "Plaintiffs"), by and through their undersigned counsel, file this

Complaint seeking an order to compel Defendant, Ventive LLC ("Ventive" or the "Defendant")

(the Plaintiffs and the Defendant are collectively referred to as the "Parties"), to arbitrate all matters

relating to the contract that the Parties entered into regarding work that the Defendant was hired

to perform (the "project"). Plaintiffs request that this Court enter an Order pursuant to 9 U.S.C.

§4 ***compelling arbitration*** of the Plaintiffs' claims against the Defendant (and any counterclaims

the Defendant may have) detailed herein.

## NATURE OF THE ACTION

1. On or about October 23, 2017, the Parties entered into a contract titled "Master Consultant

Agreement" (the "Agreement"). *See* Agreement attached hereto as Exhibit "A". The Agreement

called for the Defendant to render consulting and technical services for the benefit of the Plaintiffs

in a timely and professional manner, with the Plaintiffs being the sole owner of the intellectual

property and the Defendant being prohibited from withholding the intellectual property from the

Plaintiffs because the Plaintiffs have paid for the services of the work that the Defendant has

performed to date. *See* Non-Disclosure Agreement attached hereto as Exhibit "B".

2. The Agreement provides that all disputes arising under or relating to the Agreement will be submitted to binding arbitration[1], which shall be submitted and conducted by one arbitrator after demand for arbitration is made by one of the Parties.

3. On February 16, 2018, the Plaintiffs sent notice to the Defendant and demanded arbitration related to disputes[2] arising under the Agreement. *See* Demand Letter attached hereto as Exhibit "C".

4. Notwithstanding the terms of the Agreement, the Defendant has failed to comply with the terms of the Agreement requiring it to arbitrate the disputes with the Plaintiffs in Delray Beach, Florida or within 10 miles of the Plaintiffs' principal place of business (which would be in Palm Beach County, Florida) by its failure to respond to the Plaintiffs' demand to have such disputes resolved by arbitration. Furthermore, the Defendant has withheld the Plaintiffs' intellectual property, which has jeopardizde the Plaintiffs' ability to continue their project and subjecting them to enormous damages.

---

[1] "Will be construed in accordance with the laws of Florida as applied to a contract to be fully performed therein and without reference to laws pertaining to conflict of laws. THE PARTIES agree to waive all rights to a trial by jury and hereby agree to submit all disputes to binding arbitration, which shall be submitted and conducted by one arbitrator, the costs of which shall be equally shared among THE PARTIES. The parties agree that the arbitrator shall have authority to grant injunctive or other forms of equitable relief to any party. Any arbitration relating to a dispute under Section 5 of this Agreement shall be conducted in Boise, Idaho or within 10 miles of CONSULTANT'S principal place of business, Any arbitration relating to Section 2 shall be conducted in Delray Beach, Florida or within 10 miles of COMPANIES SCIENCE's principal place of business. Any arbitration relating to Sections 2 and 5 shall take place in Boise or Delray Beach, or within 10 miles of the principal place of business of whichever party first demands arbitration in writing pursuant to this Agreement. The prevailing party of any such arbitration or dispute shall be awarded all costs of arbitration including attorney's fees and travel costs. It is specifically understood and agreed that any party may enforce any award rendered pursuant to the arbitration provisions of this Section by bringing suit in any court of competent jurisdiction."

[2] The Defendant demanded additional financial compensation to complete the scope of work described in the Agreement that is in excess of the contract price, and the Plaintiffs refused to pay such amount, but were willing to discuss such after they reviewed the work product already completed and paid for, but the Defendant refused to produce the work product, which is the Plaintiffs' intellectual property.

5. Therefore, by this action, in accordance with the Agreement, Plaintiffs seek to compel the Defendant to arbitrate the  disputes arising under the Agreement as more fully delineated in Exhibit "C" hereto.

## PARTIES

6. Plaintiff, CaringOnDemand, LLC is a limited liability company created under the laws of the state of Delaware, with its principal place of business located at 4450 S. Tiffany Drive, West Palm Beach, Florida 33407.

7. Plaintiff, Avior Sciences, LLC is a limited liability company created under the laws of the state of Delaware, with its principal place of business located at 4450 S. Tiffany Drive, West Palm Beach, Florida 33407.

8. Defendant, Ventive, LLC is limited liability company created under the laws of the State of Idaho, with its principal place of business located at 121 N. 9th Street, STE 101, Boise, Idaho 83702.

## JURISDICTION AND VENUE

9. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332, as this is a civil action with complete diversity of citizenship, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

10. Additionally, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331.

11. Venue is proper because the Plaintiffs reside in Palm Beach County, Florida and the Agreement provides that any action brought by either party enforcing the terms and provisions of the Agreement shall be governed by the laws of the State of Florida.  Venue is also proper pursuant

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Telephone (212)-587-5971● Fax (212)-658-9852

to 28 U.S.C. §1391 (a) as a substantial part of the events or omission giving rise to the claims set forth in the instant action occurred in the Southern District of Florida.

12. Further, under the Federal Arbitration Act, "[t]he hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. §4. Pursuant to the Agreement, "[a]ny arbitration relating to Section 2 [Ownership Interests in Work Product] and 5 [Compensation] shall take place in Boise or Delray Beach, or within 10 miles of the principal place of business of whichever party first demands arbitration in writing pursuant to this Agreement."

13. The Plaintiffs served Defendant with notice of their demand for arbitration pursuant to Sections 2 and 5 of the Agreement of February 16, 2018.

## FACTUAL BACKGROUND

14. On or about October 23, 2017, the Plaintiffs and Defendant entered into the Agreement. The Agreement provided for the Defendant to render certain consulting services to the Plaintiffs in a timely and professional manner, and the Plaintiffs to compensate the Defendant for a quoted fee based on a written detailed scope of work that was amended on two different occasions in writing.

15. The services that the Defendant was required to provide to the Plaintiffs were detailed in the Statement of Work ("SOW") provided as an attachment to the Agreement. *See* SOW attached hereto as Exhibit "D".

16. The SOW stated that "[p]ursuant to the Consulting Agreement, dated June 28th, 2017 and by the signatures of their representatives below… execute this Statement of Work to identify the Services which CONSULTANT [Defendant] agrees to provide to AVIOR SCIENCES, to set forth the amount which AVIOR SCIENCES agrees to pay CONSULTANT for the Services identified

herein, and to set forth any additional terms and conditions concerning the Services described herein."

17. As to compensation, the Agreement states, "[t]he Aggregate amount of CONSULTANT'S invoice for the Services rendered hereunder shall not exceed the amount(s) set forth in the SOW and shall constitute CONSULTANT's entire compensation for Services unless otherwise agreed to in writing by an authorized representative of COMPANIES [Plaintiffs]."

18. The Agreement further provides that "[s]hould it be determined that additional services are required due to the development of new projects or because additional Services are required under the existing SOW, Addendum A [SOW] may be amended by the issuance of Addendum A-1, A-2, A-3 etc., to compensate the additional Services."

19. The SOW also states that "AVIOR SCIENCES agrees to pay CONSULTANT for the Services provided and invoiced (detailed invoices to be provided) under this SOW upon AVIOR SCIENCES's acceptance of the Services and/or Work Product, at 15-day intervals."

20. And, the SOW provides "[t[he maximum contract amount of this SOW shall not exceed $131,000 unless there is a change in Scope with AVIOR's authorization. If CONSULANT determines it will exceed the maximum work hour amount; a written request shall be submitted by CONSULTANT with specific documentation explaining why CONSULTANT shall exceed the maximum amount. Upon review and approval by AVIOR the CONSULTANT will submit a revised SOW in advance for AVIOR SCIENCE's approval."

21. The project under which the Agreement was entered between the Parties was first submitted to numerous companies for consideration, several of which submitted bids to provide services to the Plaintiffs.

22. The Defendant won the bid based on its price and ability to perform the project.

23. Thus, per the specific terms of the Agreement, the Plaintiffs agreed to pay and the Defendant agreed to accept $131,000.00 for the SOW and no further funds would be paid to Defendant unless additional services and projects were requested by the Plaintiffs, which none were .

24. Neither the Agreement nor the SOW provided the Defendant an had unlimited budget to complete the project, unless the project was specifically expanded by the Plaintiffs with their consent.

25. To date, the Defendant has not produced its work product, which is the sole and exclusive intellectual property of the Plaintiffs, despite the fact that Plaintiffs have made the payments due and owing under the Agreement. .

26. In or around January 2018, the Defendant informed the Plaintiffs that the price agreed to for the project by the Parties was insufficient, and the Defendant required that the Plaintiffs pay the entire contract price plus agree to pay additional amounts for the Defendant to continue and ultimately complete the project. In fact, the Defendant advised the Plaintiffs that the fee would be more than $220,000.00, which is at least $90,000.00 more than the agreed upon contract price.

27. As of such time, the Plaintiffs had already paid nearly $60,000.00 to the Defendant under the Agreement, and believe the project was less than one-third complete.

28. The Plaintiffs refused to pay the additional amounts of money demanded by the Defendant, and thus Plaintiffs demanded the work that had been performed to date under the Agreement before any further funds were tendered so that the Plaintiffs could evaluate the Defendant's work product, the actual completion of the SOW to date, and to consider the scope of the entire project.

29. The Defendant refused to release its work product, continued to demand full and additional payments, and refused to continue to perform any further work.

30. As a result of this dispute as to compensation and ownership of the work product, Plaintiffs demanded arbitration upon their determination that this matter could not otherwise be amicably resolved between them and the Defendant.

31. Specifically, the Agreement states that, "[s]hould it be determined that additional services are required due to the development of new projects or because additional Services are required under the existing SOW, Addendum A [SOW] may be amended by the issuance of Addendum A-1, A-2, A-3 etc., to compensate the additional Services."

32. Additionally, the SOW states, "If CONSULANT determines it will exceed the maximum work hour amount; a written request shall be submitted by CONSULTANT with specific documentation explaining why CONSULTANT shall exceed the maximum amount. Upon review and approval by AVIOR the CONSULTANT will submit a revised SOW in advance for AVIOR SCIENCE's approval."

33. The Defendant's request for additional payment for the completion of the SOW under the Agreement is wholly inappropriate and unsubstantiated.

34. If the Defendant underbid the project, then it did so at its own peril. However, it appears that the Defendant fraudulently induced the Plaintiffs into entering the Agreement with the intention of not completing the project for the agreed upon contract price, but to demand additional funds and to hold the Plaintiffs' intellectual property hostage until such ransom is paid by the Plaintiffs.

35. Pursuant to Section 13 of the Agreement, these disputes are required to be arbitrated, as the Agreement states:

> "Will be construed in accordance with the laws of Florida as applied to a contract to be fully performed therein and without reference to laws pertaining to conflict of laws. THE PARTIES agree to waive all rights to a trial by jury and hereby agree to submit all disputes to binding arbitration, which shall be submitted and conducted by one arbitrator, the

> costs of which shall be equally shared among THE PARTIES. The parties agree that the arbitrator shall have authority to grant injunctive or other forms of equitable relief to any party. Any arbitration relating to a dispute under Section 5 of this Agreement shall be conducted in Boise, Idaho or within 10 miles of CONSULTANT'S principal place of business, Any arbitration relating to Section 2 shall be conducted in Delray Beach, Florida or within 10 miles of COMPANIES SCIENCE's principal place of business. Any arbitration relating to Sections 2 and 5 shall take place in Boise or Delray Beach, or within 10 miles of the principal place of business of whichever party first demands arbitration in writing pursuant to this Agreement. The prevailing party of any such arbitration or dispute shall be awarded all costs of arbitration including attorney's fees and travel costs. It is specifically understood and agreed that any party may enforce any award rendered pursuant to the arbitration provisions of this Section by bringing suit in any court of competent jurisdiction."

36. Pursuant to §13 of the Agreement, the Plaintiffs' arbitration demand stated that the arbitration proceedings must be conducted in Delray Beach, Florida or within 10 miles of the Plaintiff's principal place of business since the Plaintiffs were the first to serve a demand for arbitration.

37. As of the filing of this Complaint, there has been no written or oral request made by the Defendant, nor has the Defendant responded to the Plaintiffs demand for the Defendant to arbitrate these disputes.

38. All conditions precedent have been complied with by the Plaintiffs or waived by the Defendant.

## COUNT I
## ACTION TO COMPEL ARBITRATION PURSUANT TO §4 OF THE FEDERAL ARBITRATION ACT

39. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 38 of this Complaint as if set forth fully herein.

40. Section 2 of the Federal Arbitration Act provides as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by *arbitration* a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to *arbitration* an existing controversy arising out of such a contract,

> transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added).

41. The controversies that are the subject of this action arise from the contract entered into between the Parties and involve interstate commerce that falls within the scope of the Federal Arbitration Act, 9 U.S.C. §2.

42. Section 4 of the Federal Arbitration Act Provides as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for *arbitration* may *petition* any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such *arbitration* proceed in the manner provided for in such agreement.

9 U.S.C. § 4 (emphasis added).

43. Pursuant to 9 U.S.C. §4, the Defendant should be required to arbitrate the disputes under the Agreement in Delray Beach, Florida or within 10 miles of the Plaintiffs' principal place of business sharing the costs fifty-fifty with the Plaintiffs.

**WHEREFORE**, Plaintiffs are entitled to, prays for, and demands a judgment ordering, directing and compelling the Defendant to arbitrate the claims asserted in the instant action in accordance with the arbitration provision in the Agreement  by agreeing to one arbitrator to conduct an arbitration that shall commence in in Delray Beach, Florida or within 10 miles of the Plaintiffs' principal place of business within thirty (30) days of the Order and the Defendant and Plaintiffs sharing the costs of the arbitration fifty-fifty, awarding the Plaintiffs their costs and attorneys' fees for bringing forth this action, and granting Plaintiffs such other and further relief as to which this Court deems appropriate and just.

## RESERVATION OF RIGHT TO AMEND PLEADINGS

Plaintiffs reserve the right to amend these pleadings to add any and all claims that it

determines are just and appropriate including a motion for attorneys' fees and costs.

Dated: February 21, 2018

Respectfully submitted,

DAVIDOFF LAW FIRM, PLLC

By: _____ */JMD/*_____

Jonathan Marc Davidoff, Esq.
*Attorneys for Plaintiffs*
Florida Bar No.: 179833
228 East 45th Street
Suite 1700
New York, New York 10017
Tel: (212)587-5971
Fax: (212)658-9852
Email: Jonathan@davidofflawfirm.com
Secondary Email: Efile@davidofflawfirm.com

# Exhibit "A"

**MASTER CONSULTING AGREEMENT**

This Consulting Agreement ("Agreement") is entered into effective as of October 23rd, 2017 by and between Ventive LLC ("CONSULTANT"), an Idaho limited liability company with a primary address of 121 N. 9th St., STE 101 Boise, ID 83702 and Caring People 5300 West Atlantic Avenue, Suite 200 Delray Beach, FL 33484 and CaringOnDemand and Avior Sciences located at 5300 West Atlantic Avenue, Suite 600 ("Companies"). Consultant and Companies are collectively referred to as "THE PARTIES".

CONSULTANT represents that it has sufficient expertise to perform the services described in Exhibit A attached hereto and incorporated herein by reference (the "Services"), and Caring People has determined to engage CONSULTANT to perform those Services on the following mutually agreed terms and conditions.

**1.    Services**

CONSULTANT will render to COMPANIES the Services in a timely and professional manner and to the best of his ability.

A new Statement of Work ("SOW") "Exhibit" will be required for each new project requested by COMPANIES. Each SOW will become an integral part of this Agreement by reference when executed or otherwise mutually approved by COMPANIES and CONSULTANT in writing (e.g., by email).

**2.    Ownership Interests in Work Product:**

Except where otherwise stated in each respective Statement of Work "SOW", provided that COMPANIES is not in breach and all outstanding fees due pursuant to any SOW relating to CONSULTANT's Services have been paid in full, all rights, title and interest in the work product of CONSULTANT's Services shall become the exclusive property of COMPANIES, including all intellectual property rights, copyrights, patents, trademarks, and trade secrets related to the work product delivered by CONSULTANT for said payment ("Work Product"). For the purposes of this Agreement, Work Product shall mean all work product generated by CONSULTANT solely or jointly with others in the performance of Services.

In the event that CONSULTANT integrates any work that was previously created by the CONSULTANT ("Pre-Existing Work") into any Work Product, the CONSULTANT shall inform COMPANIES prior to its intent to do so and provide a reasonably detailed explanation of the "Pre-Existing Work" and its purpose within the COMPANIES development project. COMPANIES may decline the CONSULTANT'S use of "Pre-Existing Work" but only for commercially reasonable purposes.  So long as COMPANIES is not in breach of this Agreement, CONSULTANT shall grant to COMPANIES a worldwide, royalty-free, perpetual, irrevocable license to exploit and use in any way the incorporated "Pre-Existing Work" items, including, but not limited to, any and all copyrights, patents, designs, trade secrets, trademarks or other intellectual property rights, in connection with the Pre-Existing Work and Work Product in any manner that. CONSULTANT warrants that it shall not knowingly incorporate into any Work Product any material that would infringe any intellectual property rights of any third party. For the avoidance of any doubt, notwithstanding any other term or provision contained herein, CONSULTANT retains all rights, title and interest in the Pre-Existing Work, which shall not be considered Work Product for the purposes of this Agreement. If CONSULTANT integrates any "Pre-Existing Work" and unilaterally informs COMPANIES to cease using the "Pre-Existing Work" at any time in the future, so long as COMPANIES is not in breach of this Agreement, CONSULTANT shall provide a   work around within 7 business days at no cost to COMPANIES.

## 3.    Confidentiality

During the Term of this Agreement, CONSULTANT will have the opportunity to acquire and/or obtain access to confidential and proprietary information and trade secrets of COMPANIES and its affiliates, including but not limited to marketing strategies, technical information, product development and pricing information, personnel information, and financial information ("Confidential Information"). CONSULTANT agrees to maintain the Confidential Information in strictest confidence and to not disclose or permit it to be accessed by any third party without COMPANIES's prior written permission. Confidential Information of COMPANIES also includes all Work Product developed by CONSULTANT hereunder if such Work Product has not yet been made publicly available. Once Work Product has been made publicly available, CONSULTANT shall be permitted to utilize excerpts from the Work Product to advertise its consulting services, with the prior permission of COMPANIES, which shall not be unreasonably withheld.

CONSULTANT will protect the confidentiality of such Confidential Information using efforts no less than the efforts exercised by it with respect to its own confidential business information or as required by due care. CONSULTANT agrees not to use any Confidential Information except to perform the Services for COMPANIES hereunder. This section (3. Confidentiality) shall also apply to CONSULTANT'S employees, agents, contractors, shareholders, their family members and any and all others whom they may control.

The covenants of this provision shall not apply to information which is (a) known to CONSULTANT or is publicly available at the time of disclosure by COMPANIES; (b) becomes publicly available after disclosure by COMPANIES to CONSULTANT through no act of either party; (c) is hereafter rightfully furnished to CONSULTANT by a third party without restriction as to use or disclosure; (d) is disclosed with the prior written consent of COMPANIES; (e) is information that was independently developed by CONSULTANT; or (f) is required to be disclosed pursuant to any judicial or administrative proceeding, provided that CONSULTANT immediately after receiving notice of such action notifies COMPANIES of such action to give COMPANIES the opportunity to seek any other legal remedies to maintain such information in confidence.

CONSULTANT acknowledges that if COMPANIES is required to bring any legal actions to enforce the provisions herein, the damages will be irreparable and difficult to measure; and, as such, COMPANIES shall be entitled to seek equitable relief, including a preliminary injunction in addition to any other relief available.

CONSULTANT shall adhere to COMPANIES's then-applicable policies and procedures relating to the access and use of COMPANIES's computers, networks and communication systems and all information contained thereon, incorporated herein by reference as though fully set forth.

## 4.    Independent Contractor: Consultant's Employees

CONSULTANT's relationship with COMPANIES is that of an independent contractor. Nothing in this Agreement will be construed to create a joint venture, agency, partnership or employer-employee relationship. CONSULTANT acknowledges that he/she is not an employee of COMPANIES, and as such, CONSULTANT agrees that he/she is not eligible for, or entitled to, any benefits that COMPANIES makes available to its employees. CONSULTANT forever waives any rights he/she may have or acquire to any benefits COMPANIES makes available to its employees.

CONSULTANT will be responsible for keeping all records and paying its expenses related to the Services performed hereunder. As CONSULTANT is not COMPANIES's employee, CONSULTANT is responsible for paying all required state and federal taxes and obligations, including but not limited to

Case 1:18-cv-00120-CWD   Document 1-5   Filed 03/13/18   Page 15 of 42
Case 9:18-cv-80211-BB   Document 1-1   Entered on FLSD Docket 02/21/2018   Page 4 of 7
[Type here]

FICA (social security), state or federal unemployment insurance contributions, state or federal income tax, state disability insurance contributions, and workers' compensation insurance on behalf of CONSULTANT. COMPANIES is not obligated to and will not withhold sums for such payments from the compensation paid to CONSULTANT hereunder.

**5.      Compensation**

The aggregate amount of CONSULTANT's invoice for the Services rendered hereunder shall not exceed the amount(s) set forth in the SOW and shall constitute CONSULTANT's entire compensation for Services unless otherwise agreed to in writing by an authorized representative of COMPANIES. Should it be determined that additional services are required due to the development of new projects or because additional Services are required under the existing SOW, Addendum A may be amended by the issuance of Addendum A-1, A-2, A-3 etc., to compensate the additional Services. CONSULTANT shall be responsible for all other costs and expenses incident to the performance of the Services, unless the parties agree to otherwise in writing.

**6.      Payment**

Except as may be otherwise specified in a SOW, CONSULTANT will submit an invoice to COMPANIES on a bi-monthly basis for Services rendered during that period. Each invoice will reference any SOW that applies to this Agreement. All sums due to CONSULTANT by COMPANIES hereunder will be due and paid upon 15 days following the receipt of each invoice from CONSULTANT.

**7.      Term and Termination**

This Agreement may be terminated at any time by either party, without cause, upon thirty (30) days' written notice to the other party. COMPANIES may terminate this Agreement immediately with cause, upon issuance of a written notice of termination to CONSULTANT, describing the basis for cause. In the event of termination, COMPANIES will promptly pay CONSULTANT for all Services pursuant to this Agreement or any SOW substantially completed in accordance with the terms of this Agreement through the date of such termination. CONSULTANT will prepare and submit documentation as necessary to evidence progress of the Services to the date of termination and provide a final invoice to COMPANIES. Furthermore, in the event of termination and upon full payment of CONSULTANT's final invoice, and provided that COMPANIES is not in breach of this Agreement, CONSULTANT agrees to provide COMPANIES with all copies of any and all "Pre-Existing Work", software, source code, materials, documents or information, in whatever form, making up all versions of the Work Product software (including intermediate and final versions) prepared or obtained by CONSULTANT and paid in full per the final invoice by COMPANIES, in connection with the Services rendered and, upon COMPANIES's request, certify to COMPANIES that CONSULTANT has provided all such source code, copies of materials, documents and information to COMPANIES for all work effort.

**8.      Limitation of Liability**

IN NO EVENT WILL EITHER PARTY BE LIABLE FOR ANY INDIRECT, INCIDENTAL, PUNITIVE, SPECIAL OR CONSEQUENTIAL DAMAGES, OR DAMAGES FOR LOST PROFITS OR REVENUES, FOR ANY CLAIM RELATING TO OR ARISING UNDER THIS AGREEMENT OR FOR ANY BREACH, REPUDIATION OR TERMINATION OF THIS AGREEMENT, EVEN IF THAT PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

Case 1:18-cv-00120-CWD  Document 1-5  Filed 03/13/18  Page 16 of 42
Case 9:18-cv-80211-BB  Document 1-1  Entered on FLSD Docket 02/21/2018  Page 5 of 7
[Type here]

**9.    Indemnification**

THE PARTIES will defend, indemnify and hold harmless each other's officers, directors, employees, agents, representatives, and affiliates from and against any and all liability, costs, or damages (including reasonable attorneys' fees and other legal expenses) arising directly or indirectly from (i) any allegation that the Work Product, or any part thereof, infringes any patent, copyright, trade secret, or other proprietary right of any third party; (ii) any act or omission of THE PARTIES' agents or representatives, including all claims relating to the injury or death of any person or damage to any property; or (iii) by reason of any breach of the warranties, agreements, representations or obligations of THE PARTIES under this Agreement, provided that the party receiving such claim promptly notifies the other of such claim, judgment or proceeding in writing and tenders the indemnifying party the opportunity to settle such claim, judgment or proceeding at their expense and cooperates with the indemnifying party in settling such claim, judgment or proceeding.

**10.    Return and Availability of Information**

In the event of the termination or expiration of this Agreement for any reason whatsoever, CONSULTANT will promptly return to COMPANIES in addition to Section 7 Term and Termination all equipment, materials, documents, or data, whether in written, graphic, machine readable or other form, if any, supplied by COMPANIES in connection with this Agreement. All equipment provided by COMPANIES to CONSULTANT will be returned in as good condition as when received, reasonable wear and tear excepted.

**11.    Notice**

Any notice required under this Agreement shall be in writing and shall be sent to the individuals listed below. Notices shall be effective when received and shall be sent via facsimile, e-mail, certified or registered mail, return receipt requested, or via overnight carrier.

If to COMPANIES:                                If to CONSULTANT:

5300 West Atlantic Blvd. Suite 600              121 N. 9th St. Ste. 101
Delray Beach, FL 33484                          Boise, ID 83702
Attention: Glenn Dennis                         Attention: Jonathan Cardella
E-mail: glenn.dennis@aviorsciences.com          E-mail: jon@getventive.com

**12.    Severability and Waiver**

If any provision of this Agreement is held to be invalid or unenforceable for any reason, the remaining provisions will continue in full force without impairment, and any invalid provision will be replaced with a valid provision most closely approximating the purpose and economic effect of the invalid provision. The waiver by either party of any breach of this Agreement will not operate as a waiver of any subsequent breach.

**13.    Settlement of Disputes**

Case 1:18-cv-00120-CWD  Document 1-5  Filed 03/13/18  Page 17 of 42
Case 9:18-cv-80211-BB  Document 1-1  Entered on FLSD Docket 02/21/2018  Page 6 of 7
[Type here]

This Agreement will be construed in accordance with the laws of Florida as applied to a contract to be fully performed therein and without reference to laws pertaining to conflict of laws. THE PARTIES agree to waive all rights to a trial by jury and hereby agree to submit all disputes to binding arbitration, which shall be submitted and conducted by one arbitrator, the costs of which shall be equally shared among THE PARTIES. The parties agree that the arbitrator shall have authority to grant injunctive or other forms of equitable relief to any party. Any arbitration relating to a dispute under Section 5 of this Agreement shall be conducted in Boise, Idaho or within 10 miles of CONSULTANT'S principal place of business, Any arbitration relating to Section 2 shall be conducted in Delray Beach, Florida or within 10 miles of COMPANIES SCIENCE's principal place of business. Any arbitration relating to Sections 2 and 5 shall take place in Boise or Delray Beach, or within 10 miles of the principal place of business of whichever party first demands arbitration in writing pursuant to this Agreement. The prevailing party of any such arbitration or dispute shall be awarded all costs of arbitration including attorney's fees and travel costs. It is specifically understood and agreed that any party may enforce any award rendered pursuant to the arbitration provisions of this Section by bringing suit in any court of competent jurisdiction.

**14.    Amendment and Assignment**

Any amendment of this Agreement will be effective only if it is in writing signed by the party(s) to be charged. This Agreement will not be assigned or transferred by CONSULTANT. COMPANIES may transfer all its rights and duties hereunder to another business, subsidiary or affiliate without CONSULTANT's consent.  Any such prohibited assignment or transfer will be null and void.

**15.    Solicitation of Employment**

THE PARTIES agree not to solicit the services of any employees, consultants, suppliers or customers of the other during the term of this Agreement and for twenty-four (24) months thereafter.

**16.    Advertising**

Except as provided for in Section 3, CONSULTANT shall acquire no right to use, and shall not use, without COMPANIES's prior written consent, the names, characters, artwork, designs, trade names, copyrighted materials, trademarks or service marks of COMPANIES, its related subsidiary companies, parent, employees, directors, shareholders, assigns, successors or licensees.

Notwithstanding the foregoing, COMPANIES does not agree to permit CONSULTANT to use COMPANIES's name and logo on its website for the sole purpose of advertising COMPANIES as a client of CONSULTANT.  COMPANIES will on an individual basis be a reference for CONSULTANT.

**17.    Records.**

CONSULTANT shall retain all documents, notes records and all other documentation with regard to the Services for a period of ninety (90) days after completion of such services. COMPANIES or its duly authorized representative, at all reasonable times during the performance of such Services and such subsequent ninety (90) day period, shall be provided upon written request copies of such documents, notes and records for purposes of auditing and verifying the costs of such Services or for any other reasonable purpose.

**18.    Entire Understanding**

This Agreement constitutes the entire agreement between the parties, superseding any and all agreements, either oral or written, between the parties hereto only with respect to the subject matter of this Agreement. Each party to this Agreement acknowledges that no representations, inducements, promises or agreements, orally or otherwise, with respect to only the subject matter of this Agreement,

Case 1:18-cv-00120-CWD   Document 1-5   Filed 03/13/18   Page 18 of 42
Case 9:18-cv-80211-BB   Document 1-1   Entered on FLSD Docket 02/21/2018   Page 7 of 7
[Type here]

have been made by any party, or by anyone acting on behalf of any party, which are not embodied herein, and that no agreement, statement or promise not contained in the Agreement will be valid or binding upon the Statements of Work authorized by this Agreement, unless the parties agree to otherwise in writing. The parties acknowledge and agree that, for the purposes of this Agreement and any SOW, that a facsimile, email, or other electronic copy shall suffice as a writing.

**19.    Survival**

The provisions of Sections 2, 3, 4, 7, 8, 9, 10, 11, 12, 13, 16, 17 and 18 shall survive the expiration or termination of this Agreement and continue in full force and effect and Section 15 shall survive expiration or termination of this agreement as stated therein.

**20.    Signatures**


**COMPANIES**                                 **CONSULTANT**


By:                                           By:

Name:                                         Name:  Jonathan Cardella

Date:                                         Date: 10/23/2017

# Exhibit "B"

## NON-DISCLOSURE AGREEMENT

**THIS AGREEMENT** is made on <u>June 14, 2017</u>

### BETWEEN

1. **CaringOnDemand,** (the "Disclosing Party"); and
2. **Ventive LLC,** (the "Receiving Party"),

collectively referred to as the "Parties".

### RECITALS

A. The Receiving Party understands that the Disclosing Party has disclosed or may disclose information relating to confidential information, which to the extent previously, presently, or subsequently disclosed to the Receiving Party is hereinafter referred to as "Proprietary Information" of the Disclosing Party.

### OPERATIVE PROVISIONS

1. In consideration of the disclosure of Proprietary Information by the Disclosing Party, the Receiving Party hereby agrees: (i) to hold the Proprietary Information in strict confidence and to take all reasonable precautions to protect such Proprietary Information (including, without limitation, all precautions the Receiving Party employs with respect to its own confidential materials), (ii) not to disclose any such Proprietary Information or any information derived therefrom to any third person, (iii) not to make any use whatsoever at any time of such Proprietary Information except to evaluate internally its relationship with the Disclosing Party, and (iv) not to copy or reverse engineer any such Proprietary Information. The Receiving Party shall procure that its employees, agents and sub-contractors to whom Proprietary Information is disclosed or who have access to Proprietary Information sign a nondisclosure or similar agreement in content substantially similar to this Agreement

2. Without granting any right or license, the Disclosing Party agrees that the foregoing shall not apply with respect to any information after five years following the disclosure thereof or any information that the Receiving Party can document (i) is or becomes (through no improper action or inaction by the Receiving Party or any affiliate, agent, consultant or employee) generally available to the public, or (ii) was in its possession or known by it prior to receipt from the Disclosing Party as evidenced in writing, except to the extent that such information was unlawfully appropriated, or (iii) was rightfully disclosed to it by a third party, or (iv) was independently developed without use of any Proprietary Information of the Disclosing Party. The Receiving Party may make disclosures required by law or court order provided the Receiving Party uses diligent reasonable efforts to limit disclosure and has allowed the Disclosing Party to seek a protective order.

3. Immediately upon the written request by the Disclosing Party at any time, the Receiving Party will return to the Disclosing Party all Proprietary Information and all documents or media containing any such Proprietary Information and any and all copies or extracts thereof, save that where such Proprietary Information is a

form incapable of return or has been copied or transcribed into another document, it shall be destroyed or erased, as appropriate.

4.  The Receiving Party understands that nothing herein (i) requires the disclosure of any Proprietary Information or (ii) requires the Disclosing Party to proceed with any transaction or relationship.

5.  The Receiving Party further acknowledges and agrees that no representation or warranty, express or implied, is or will be made, and no responsibility or liability is or will be accepted by the Disclosing Party, or by any of its respective directors, officers, employees, agents or advisers, as to, or in relation to, the accuracy of completeness of any Proprietary Information made available to the Receiving Party or its advisers; it is responsible for making its own evaluation of such Proprietary Information.

6.  The failure of either party to enforce its rights under this Agreement at any time for any period shall not be construed as a waiver of such rights. If any part, term or provision of this Agreement is held to be illegal or unenforceable neither the validity, nor enforceability of the remainder of this Agreement shall be affected. Neither Party shall assign or transfer all or any part of its rights under this Agreement without the consent of the other Party. This Agreement may not be amended for any other reason without the prior written agreement of both Parties. This Agreement constitutes the entire understanding between the Parties relating to the subject matter hereof unless any representation or warranty made about this Agreement was made fraudulently and, as may be expressly referred to or referenced herein, supersedes all prior representations, writings, negotiations or understandings with respect hereto.

7.  This Agreement shall be governed by the laws of the State of Florida, the parties hereby agree that all submitted disputes arising out of or in connection with this Agreement shall be settled in the courts of the State of Florida.

**CaringOnDemand**

By: _____

Name: _____

Title: _____

Address: _____

Date: _____

**Ventive LLC**

By: _____

Name:    Jonathan Cardella

Title:    CEO & Founder

Address: 121 N. 9th Street Suite 101, Boise, ID 83702

Date:    June 14, 2017

# Exhibit "C"



Jonathan Marc Davidoff, Esq.
Admitted in Florida and New York
Glen A. Kendall, Esq.
Admitted in Connecticut and New York

Aaron R. Resnick, Esq.
Admitted in Florida, of Counsel
Derek A. Schwartz, Esq.
Admitted in Florida, of Counsel

February 16, 2018

**via US Mail and Email** (Jon@getventive.com)

Jonathan Cardella
Ventive, LLC
121 N. 9th Street
STE 101
Boise, ID 83702

Re: **Demand For Arbitration**

Dear Mr. Cardella:

This Firm represents CaringOnDemand and Avior Sciences (collectively "Companies"). This letter shall server as notice to Ventive, LLC ("Ventive") of its breach of the contract it entered into between the Companies and Ventive on or about October 23, 2017 (the "Agreement") and for Ventive's misconduct in inducing the Companies into entering into the Agreement. This serves as notice of the Companies' demand to arbitrate any and all claims under the Agreement in Florida pursuant to the Agreement.

The nature of the breach stems from services that were to be provided by Ventive to the Companies pursuant to the Agreement, but were not, and your notice that you refuse to provide such services. Furthermore, Ventive refused to deliver the Companies' intellectual property to it. Finally, Ventive provided the Companies with a Statement of Work ("SOW") that included a price for the services to be rendered, which you and Ventive had no intention to perform for such price. Thus, you and Ventive intended to fraudulently induce the Companies into the Agreement. The Companies have and continue to attempt to amicably resolve this matter, but preserve their rights under the Agreement by providing this notice and demand.

As such, pursuant to §13 of the Agreement, the Companies hereby demand arbitration pursuant to §§2 & 5 of the Agreement. Furthermore, pursuant to §13 of the Agreement, the Companies hereby demand that such arbitration proceedings be completely conducted in the State of Florida, specifically within ten miles of the Companies' principal place of business. Additionally, the Companies demand that Ventive tender payment for 50% of the arbitration fees, and agree to arbitrate such matters before an agreeable arbitrator.

If you wish to discuss this matter further please contact me at jonthan@davidofflawifirm.com or at **212-587-5971**. Otherwise, we will be in touch with a list of recommended arbitrators within ten days or so.

**Davidoff Law Firm, P.L.L.C.**

228 East 45th Street
Suite 1700
New York, NY 10017
Tel: 212-587-5971
Fax: 212-658-9852



www.DavidoffLawFirm.com

100 North Biscayne Blvd.
Suite 1607
Miami, FL 33132
Tel: 305-673-5933
Fax: 305-718-0647

Respectfully,

Jonathan Marc Davidoff, Esq.

cc: clients

# Exhibit "D"

**EXHIBIT "A"**
**STATEMENT OF WORK NO. 1**
**(Per Agreement dated June 28th, 2017)**

1. **AUTHORIZATION AND EXECUTION:**

a. Pursuant to the Consulting Agreement ("Agreement") dated as of June 28th, 2017 and by the signatures of their representatives below, Avior Sciences ("AVIOR SCIENCES") and Ventive, LLC. ("CONSULTANT") execute this Statement of Work to identify the Services which CONSULTANT agrees to provide to AVIOR SCIENCES, to set forth the amount which AVIOR SCIENCES agrees to pay CONSULTANT for the Services identified herein, and to set forth any additional terms and conditions concerning the Services described herein. Except as otherwise expressly provided for herein by reference to the affected section of the Agreement, the rights and obligations of the Parties set forth in this Statement of Work (SOW) shall be governed by the Agreement. This SOW and its authorizing Agreement neither modify nor supersede any previous and/or existing agreements between AVIOR SCIENCES and CONSULTANT in any way whatsoever.

2. **DESCRIPTION OF SERVICES:**

*Background*
AVIOR SCIENCES is the research and development team of Caring People, Inc., a home care provider to patients (ROCs) in extended care facilities as well as in their homes. The provided services include companion care and skilled nursing for ROCs with dementia, Alzheimer's and other diagnosis that render them incapable of providing care for themselves. Caring People contracts its services directly with the ROC or their companion, POA/HCP, or family, who is typically living in a facility but sometimes at home.

Caring People has been undergoing rapid growth and currently relies largely on ad hoc systems, processes and tribal knowledge to perform its relatively complex workflows, such as; prospective ROC identification and qualification, non-clinical and clinical intake, admission and provision of services, and case management. Caring People largely relies on "CPA", its homegrown practice management solution, in conjunction with spreadsheets for contact management and business intelligence reporting, and other common tools such as smartphones, email and cloud-based calendaring. Sales personnel, called "HCCs", identify opportunities for prospective ROCs often by visiting facilities and through referrals from the facility staff and/or other health care providers. HCCs then perform a non-clinical intake process, qualify ROCs for admission and ability to pay for services, obtain payment information, generate services agreements containing quotes (CPA presently) and arrange for clinical assessments. Their goal is to admit ROCs under Service Agreements which first requires a clinical assessment, which produces doctor's orders, which must be ratified by signature of the attending physician. At this point, care begins and the HCC's role is concluded with respect to the ROC's admission.

*Recent Developments*
AVIOR SCIENCES has developed an alpha-ready Android application for facilitating the non-clinical intake process performed by HCCs, called HCCIntake. While this application stores and makes inputted data accessible to HCCs utilizing the Android application, it does not have full-featured CRM capabilities, such as sales team and opportunity management, workflow management, reporting/sales analytics, event triggers, task assignment, email integration, lead scoring, quoting/service agreement generation, digital signature integration for contract execution, etc. HCCIntake represents a tremendous

stride forward for AVIOR SCIENCES in streamlining the non-clinical intake process, however, HCCIntake does not manage the entire HCC workflow from prospect identification to service agreement generation, acceptance and clinical intake initiation/management, nor does it provide managerial dashboards and notifications.

*Proposed Solution*

CONSULTANT and AVIOR SCIENCES shall collaborate and work in tandem to launch HCCIntake along with the proposed "Key Deliverables", which include but are not limited Addendum 1 attached and as noted below, namely the CRM, proposed IntakeOnDemand android application, and web application for physicians to endorse MD orders,  as an integrated system to manage the entire workflow from prospect identification to initiation of care. This system shall facilitate the business process as noted in the Business Process Overview diagram (below) and provide for the automation of the desired business intelligence reports, dashboards and notifications.

New patient leads can be written to the CRM from external sources such as websites and the HCCIntake application, or manually entered by office staff for generation of a request for an HCC to perform a non-clinical intake. Additionally, leads identified in the field by the HCC can be entered through the HCCIntake application for transmission to the CRM. This initial input may include information such as patient name, address, physician, facility (or if at home), etc. Before or upon completion of the HCC Intake process, a decision will be made by the administrator, HCC (or via the system's business rules) as to whether the patient will be admitted and undergo a formal SOC Assessment by nursing staff. An affirmative decision will send a notification to one or more nurses with the IntakeOnDemand application loaded on their Android devices and affiliated with an ROC and prospective ROC's facility or service area.

Upon acceptance, the clinical nursing assessment will be performed within the IntakeOneDemand application using a seamless UI to capture the traditional form-based inputs including Medication Profile, Skin - Lesions (including photo uploads), FRAT, Geriatric Depression Scale, Braden Scale, Home Safety Assessment, Emergency Contacts and Advance Directives, etc. as provided for in (2688_001.PDF) by Steven East in his 9/22 email. The application will facilitate the creation of the plan of care, goal setting, care schedule, selection of services, and generation of MD orders for signature. The conclusion of this process by the nurse will trigger an email to the attending physician as entered by the nurse, requesting that he confirm his identity, create an account and authorized the MD orders by digital signature or opt to receive and/or return the document by fax.

*Business Process Overview*



*Project Overview*

AVIOR SCIENCES seeks to have CONSULTANT develop a system for expediting new patient onboarding, intake generation and signing of doctor's orders (IntakeOnDemand)).

CONSULTANT shall perform discovery into the existing process and shall design a proposed process flow and application prototype for each user role; home care consultant (HCC) for completion of the HCCIntake process (CRM), nurses performing clinical intake (IntakeOnDemand), physicians to sign doctor's orders, and sales and operational administrators for management purposes (CRM).

Once approved, CONSULTANT shall develop the prototype as a production-ready Laravel PHP application on AWS web server(s), running MySQL database, and shall also consist of SuiteCRM configured for Caring People, and an Android application built on React Native framework for the nursing clinical intake, as well as a browser-based web application for physician approvals. The application shall provide five distinct user roles; HCC, Nurse, Doctor, Sales Manager and Administrator. A potential sixth role will be an executive view/reporting across all offices and resources, with super admin privileges. SuiteCRM also has its own permission system for CRM administration.

*Project Objectives*
- Expedite and streamline patient onboarding/SOC intake process
- Provide data control & visibility (Intake, Orders, PoC = structured data)
- Provide an internal CRM for sales and sales managers
  - Track HCC sales production
  - Provide pipeline visibility & forecasting
  - Track production by lead and referral source
- Provide real-time executive-level business intelligence

*Proposed List of Key Deliverables*
1. **SuiteCRM** configured for Caring People workflows
   a. Full two-way integration with HCCIntake
   b. Full two-way integration with IntakeOnDemand
   c. Integration with MD's Orders (receive orders)
   d. Integration with CPA (push completed orders)
   (Note: Integrations may be accomplished via Laravel server)
   e. Service agreement generation/delivery
      i. Digitally signed
      ii. Reminders/event triggers
      iii. Pipeline visibility
   f. Custom dashboards including KPI & Pipeline views
      i. HCC
      ii. Sales Manager
      iii. Administrator
      iv. Executive
2. **IntakeOnDemand** - Clinical Intake Android Application
   a. MD Orders Generation
      i. Digitally signed
      ii. Two-way fax capabilities
      iii. Dashboard (MDs and Administrators)
      iv. MD Onboarding - any doctor can sign up/use
   b. Full clinical intake process
      i. Initial Nursing Assessment
      ii. Geriatric Depression Scale (Short Version)
      iii. Braden Scale
      iv. Fall Risk Assessment
      v. Home Safety Assessment
      vi. Emergency Contacts/Advance Directives
      vii. Medication Profile
      viii. Home Health Plan of Care
      ix. Caregiver Clinical Orientation & Supervision Note

x.     Diagnosis/ICD-10 Code assignment
xi.    Photo capture
xii.   Vital sign logging
xiii.  Voice Dictation (android.speech) (optional)



*Proposed System Architecture*

*Proposed Hosting*

Entirely hosted on AWS EC2 (S3 for storage)

- M4.large Linux - Laravel server for Production - Ideal for websites and web applications
- T2.small Linux - Laravel server for Development - T2 instances accrue CPU Credits when they are idle, and use CPU credits when they are active.
- M4.large Linux - SuiteCRM server for Production

- T2.small Linux - SuiteCRM server for Development
- Disaster recovery: Backup Nightly (AWS provided). AWS snapshots of the database, automated backup policy to manage scheduled creation and retention of backups.

*Proposed Virtual Private Cloud (VPC)*



### Onboarding Workflow

The process and workflow for the HCC intake is performed on the pre-existing HCCIntake mobile application. Information received during the HCC intake process will be pushed to the CRM and trigger the sales follow up process which will determine if the SOC assessment should be conducted or not. If admitted, an intake request (SOC Assessment) will be distributed to one or more nurses which have installed the proposed Android application. Nurses will either claim the work order or the order will be distributed using scheduling logic to be determined.

Additionally, a schedule for follow up visits will also be created with follow up visits scheduled at predetermined increments, e.g. 60, 90, and 180 days (see Work Order Types below). It is to be determined if this functionality will be included in the initial release of this system.

### SOC Assessment

The nurse will complete the intake process through use of the mobile application which will contain workflows that when completed, will generate the Intake Form with all required data entry. This will include capturing the current medications and dosages that the ROC is receiving, by utilizing a simple autocomplete medication entry feature to expedite entry (leveraging the FDA APIs), as well as the ICD-10 Diagnosis (leveraging CMS.gov), such that

a plain English diagnosis will suggest the appropriate ICD-10 codes for selection by the nurse.

Once the intake form is completed, the system will transform the intake into a Plan of Care (PDF) for the nurse's signature. Upon signature, the form will be transmitted to the physician of record for the given patient by email. The Physician will have the option to print and sign or digitally sign (web-based) the document or to have the document faxed to them at their fax number, upon entry, and will be provided with a number to return the fax which will be appended to the file and a notification sent to an administrator to manually review the fax and confirm completion.

Once the MD orders are signed, the system will store the orders, send a copy to the MD and send the resulting data to the CPA to create an Electronic Care Plan. A 60 Day Follow Up Assessment will also be scheduled for the RN to perform and ensure caregiver compliance.

### Reporting & MD Order Queue

Administrator users shall be able to view system data and usage reports via a web browser. These reports will show all activity by nurse, HCC, ROC and physician, including Sent, Received, Pending and Returned orders. The reports will contain at least the information contained with the following diagram and a global view shall be accessible to Administrators and viewable by branch and appropriate personnel with security rights while a view accessible by each physician shall be available for their cases.

*Administrative & MD Reporting Views (rough schematic)*

| MD Order(S) Queue | | | | | | MD Data Fields |
|---|---|---|---|---|---|---|
| Global View Shows All Branch Outstanding Orders | | | | | | F_name, L_Name |
| **Client Name** | **Physician Name** | Sent | Received | Pending | Returned | Specialty |
| | | | | | | NPI # |
| | | Resent | | | | UPIN # |
| | | | | | | Address |
| MD Order(S) Queue | | | | | | Email |
| User View Shows the Case Managers Open Orders | | | | | | Fax |
| **Client Name** | **Physician Name** | Sent | Received | Pending | Returned | Phone |
| | | | | | | **Front Desk Personnel** |
| | | | | | | F_name, L_Name |
| ***Each Field will be color coded with the date in the field | | | | | | Email |
| ***Need ability to print PDF with MD Signature on the document for audit purposes | | | | | | Fax |
| | | | | | | Phone |

#### Offline Functionality

The mobile application residing on the nurse's device will have offline functionality through a local stub SQLite database residing on the device. This offline functionality applies to all nurses work responsibilities and will include locally cached auto-suggested values for diagnosis, medications list and options for facilitating the clinical assessment. Nurses device will auto-sync when device is online again.

#### Photo Uploads

The mobile application residing on the nurse's device will provide options to

add/upload photos to any of the assessments being performed and to tag the photos with titles and descriptions for storage and optional review by MD or administrators. Nurses device will auto-sync when online again

Prescription Label Scanning (Optional)
Nurse and HCC mobile app users will have the ability to scan prescription label barcodes to capture the 11-digit NDC number of the medication.

Optionally, the NDC number could be translated to reveal key prescription metadata on the device as available APIs allow.

Vital Sign Capture
The application will facilitate the capture and entry of vital sign data for storage and transmission.
Digital Signatures
Doctor's orders and other documents will have the capability to be transmitted by email for digital signature utilizing open source packages for internally managing digital signature generation, encrypting the signature using private/public keys, and subsequent document storage.

Two-way Fax Functionality
Doctor's can opt to receive requests to sign MD's orders via fax and can sign and return the orders via fax to Caring People. The system will receive the faxes, upload the records to the CRM, and notify the appropriate HCC and/or administrator.

*Dashboard Examples*

The following represents the minimum level of sales manager and executive dashboarding within the CRM as provided by AVIOR SCIENCES.

VENTIVE

| Management Only 1ST FRAME | | | | |
|---|---|---|---|---|
| PERIOD | | | | BACK HOME |
| Jun-17 | Office | Inquiries | Admits | New revenue |
| | Clifton | 32 | 16 | $25,856 |
| | Meadows | 56 | 25 | $34,560 |
| | Hempstead | 42 | 20 | $32,000 |

| Management Only 2ND FRAME | | | | BACK HOME |
|---|---|---|---|---|
| | CLIFTON | | | |
| PERIOD | | | | |
| Jun-17 | Sales Rep | Inquiries | admits | new revenue |
| | Julie Hattersley | 24 | 12 | $15,850 |
| | Matt Roselli | 8 | 4 | $10,006 |

| Management and Rep 3RD FRAME | | | | BACK HOME |
|---|---|---|---|---|
| PERIOD | | | | |
| Jun-17 | Sales Rep | Inquiries | admits | new revenue |
| | Julie Hattersley | 24 | 12 | $15,850 |

| Management and Rep 4TH FRAME (Inqury) | | | | BACK HOME |
|---|---|---|---|---|
| PERIOD | | | | |
| Jun-17 | Referral Source | Client Name | Status | Follow-up date | Notes |
| | Joe Shmo | Steven East | Hot | 8/12/17 | blah blah |
| | Jane Doe | Steven Conti | Cold | 8/11/17 | blah blah |
| | Roger Rabbit | Matt Mazhefka | Non-Admit | 8/10/17 | blah blah |
| | Donald Duck | Mike Wells | Warm | 8/11/17 | blah blah |

| Management and Rep 4TH FRAME (Admit and Revenue) | | | | BACK HOME |
|---|---|---|---|---|
| PERIOD | | | | |
| Jun-17 | Referral Source | Client Name | SOC | Revenue |
| | Peter Piper | Rick James | 6/3/17 | $523 |
| | Daffy Duck | Billy Joel | 6/5/17 | $1,543 |

| Management and Rep 5TH FRAME (Notes) | | BACK HOME |
|---|---|---|
| | Client Name | Note | Next Step |
| | Steven East | Steven is so very old and has a onset of demensia. He's very interested in our service. | Call back a talk to wife |

A. **Objective** – CONSULTANT will work with AVIOR SCIENCES to design a prototype for the application and upon approval, move rapidly through development, testing and delivery of an alpha application within 120 days of initiation. The end objective is a user friendly and flexible system for streamlining and expediting the prospective patient screening and intake process, as well as managing follow up assessments. See *Project Objectives* above for mode details.

B. **Services** - CONSULTANT is prepared to provide consultation and project execution for the following, which may include but is not limited to;

1. Stakeholder interviews/project discovery
2. Technical assessment of integration requirements
3. Application design and prototyping
4. Web and mobile application development
5. Quality assurance & user testing
6. Deployment to AVIOR SCIENCES servers (optional server configuration)

D. **Deliverables** - Deliverables may include, but are not limited to:

1. All Application designs and specifications and source code
2. Web server and application backend and APIs
3. Android mobile and tablet application
4. Web-based admin system and reporting
5. System documentation
6. System training and 30 days of transition support if needed as defined by AVIOR SCIENCES. This will be included if sufficient budget is available in this SOW. Otherwise, a new SOW will be created to include the training and assistance requested by AVIOR SCIENCES.

3.   **RESOURCES:**

a. **Rate Structure:** CONSULTANT shall utilize its resources as required to conduct the tasks in this Statement of Work. The PARTIES agree to CONSULTANT rate structure detailed in Table 3.a:

| Table 3.a - Rate Structure | | |
|---|---|---|
| **Resource Name** | **Hourly Rate (USD)** | **% of Estimated Hours** |
| Chief Technologist (Jonathan Cardella) | $195 | 3% |
| Technical Lead | $150 | 10% |
| Senior User Experience Designer | $125 | 10% |
| Project Manager | $100 | 5% |
| UI Designer | $100 | 5% |
| Back End Web Developer (Laravel/PHP/MySQL) | $100 | 32% |
| Mobile Application Developer (React Native) | $100 | 20% |
| DevQps Engineer | $100 | 5% |
| Quality Assurance | $90 | 10% |
| **Average Hourly Rate:** | **$109.35** | |

| Table 3.b - Documentation and Design | |
|---|---|
| **Service Provided** | **Estimated Hours Required** |
| Server, Environment, Repo & Deployment Automation **(+7 days)** | 25 |
| Discovery & Documentation **(+15 days)** | 35 |
| UX Design (Wireframe Prototype) **(+40 days)** | 150 |
| Back End Development & Integration (web Server) **(+70 days)** | 280 |
| Mobile Application Development **(+80 days)** | 250 |
| CRM Installation, Configuration, & Integration (optional/in parallel) | 230 |
| Admin/Reporting System Development **(+90 days)** | 70 |
| Quality Assurance Testing  **(+110 days)** | 60 |
| Deployment to Production **(+120 days)** | 8 |
| Project Management (N/A) | 90 |
| **Estimated Total Hours** | **1,198** |
| **Total Estimated Cost** | **$131,000** |
| **Estimated Turnaround Time** | **120 days** |

b. **Conditions:**

  i. Rates listed above are not guaranteed outside of this SOW unless specifically stated in subsequent SOWS. Rates will not change in this SOW nor any SOW unless AVIOR SCIENCES explicitly consents by written authorization.

  ii. The Rates listed herein are confidential and shall not be disclosed to any third party without CONSULTANT's written consent unless required by law.

**4.    SCOPE OF WORK:**

a. **"Work Product" or "Services:** For the purposes of this SOW and pursuant to the Agreement, except as limited herein, some of the specific tasks to be performed may include but are not limited to:

    i.    **Personnel:** CONSULTANT will provide appropriately qualified personnel to support each area of expertise required to execute the tasks listed below at a level determined by AVIOR SCIENCES and CONSULTANT.

    ii.    **Additional Services:** CONSULTANT will be prepared to provide additional services as required to support the general task categories listed. AVIOR SCIENCES will provide connectivity, access and administrative rights sufficient to complete all tasks.

    iii.    **Report Generation:** CONSULTANT will generate and provide required reports by AVIOR SCIENCES as billable time hereunder.

    iv.    **Deliverables:** Labor shall be delivered as required to support each of the tasks 0listed in this Statement of Work. Specific deliverables may include but are not limited to:

        1. Technical briefings, interview findings, reports, evaluations and presentations prepared under this agreement
        2. Status Reports as required and in the format required by AVIOR SCIENCES
        3. Work Product, including but not limited to findings documentation.

**5.**    **COMPENSATION AND PAYMENT:**

a.  **AVIOR SCIENCES** has provided CONSULTANT with a $20,000 retainer to start work outlined in this SOW which is being held by CONSULTANT. CONSULTANT shall specifically use the retainer to pay approved invoices that remain unpaid by AVIOR SCIENCES for more than 30 days, at which time AVIOR SCIENCES shall replenish the retainer to $20,000. CONSULTANT agrees not to use retainer to pay disputed invoices or for any other use whatsoever. Any unused retainer balance shall be refunded to AVIOR SCIENCES upon completion or termination of this SOW within 3 business days.

b.  AVIOR SCIENCES agrees to pay CONSULTANT for the Services provided and invoiced (detailed invoices to be provided) under this SOW upon AVIOR SCIENCES's acceptance of the Services and/or Work Product, at 15-day intervals. Upon receipt of CONSULTANT's invoice AVIOR SCIENCES shall have 15-days to review and approve.  Reference activities from CONSULTANT time reports and/or Work Product delivered shall be used to verify acceptance of work effort.

c.  The maximum contract amount of this SOW shall not exceed $131,000 unless there is a change in Scope with AVIOR's authorization. If CONSULTANT determines it will exceed the maximum work hour amount; a written request shall be submitted by CONSULTANT with specific documentation explaining why CONSULTANT shall exceed the maximum amount. Upon review and approval by AVIOR the CONSULTANT will submit a revised SOW in advance for AVIOR SCIENCES's approval.

d.  AVIOR SCIENCES shall reimburse Consultant only for those travel expenses directly related to the performance of the Services that have been specifically pre-approved by AVIOR SCIENCES in writing.

e.  Per the Consulting Agreement, invoice payments are due Net 15 after receipt. CONSULTANT will apply a 1.5% monthly interest charge to any balances that are not received within thirty days of invoice delivery excluding any disputed invoices. Any questions or clarifications needed on any invoice entries must be received by CONSULTANT within 5 days of AVIOR SCIENCES request.  After 15 days, invoices are

considered accepted by AVIOR SCIENCES contingent upon Consultant providing deliverable requirement as agreed.

   f.   Reference activities from CONSULTANT's time reports and/or Work Product delivered shall be used to verify acceptance of work effort.

**6.   TERM:**

   a.   This Statement of Work shall remain in effect until terminated as per the Agreement, or superseded by a new Statement of Work.

**7.   SIGNATURES:**

**AVIOR
SCIENCES**

                                   **CONSULTANT**

|  |  |
|---|---|
|  | Jonathan Cardella, CEO of Ventive LLC |
| Signature: | Signature: |
| Date: | Date: 10/23/2017 |

**JS 44** (Rev. 06/17)                                    **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)*   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| CARINGONDEMAND, LLC and AVIOR SCIENCES, LLC | VENTIVE LLC |

**(b)** County of Residence of First Listed Plaintiff  Palm Beach, Florida
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Boise, Idaho
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Jonathan Marc Davidoff, Esq.
228 East 45th Street, Suite 1700, New York, New York 10017
Tel: (212)587-5971

Attorneys (If Known)

**(d)** Check County Where Action Arose:  ☐ MIAMI- DADE   ☐ MONROE   ☐ BROWARD  ☑ PALM BEACH   ☐ MARTIN   ☐ ST LUCIE   ☐ INDIAN RIVER   ☐ OKEECHOBEE   HIGHLANDS

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question (U.S. Government Not a Party)

☑ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                      and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☑ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☑ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC  3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | Act | 26 USC 7609 | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities – Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | Under Equal Access to Justice |
| | ☐ 446 Amer. w/Disabilities – Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus-Alien Detainee | | Statutes |
| | | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☑ 1  Original Proceeding

☐ 2  Removed from State Court

☐ 3  Re-filed- (see VI below)

☐ 4  Reinstated or Reopened

☐ 5  Transferred from another district (specify)

☐ 6  Multidistrict Litigation

☐ 7  Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).**   (See instructions second page):

a) Re-filed Case ☐ YES ☐ NO      b) Related Cases ☐ YES ☐ NO

JUDGE                                              DOCKET NUMBER

**VII. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

9 U.S.C. §4

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes ☑ No

| ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE | SIGNATURE OF ATTORNEY OF RECORD /s/Jonathan Davidoff | DATE February 21, 2018 |
|---|---|---|

**FOR OFFICE USE ONLY**

AMOUNT                    RECEIPT #                    IFP

JS 44 Reverse (Rev. 02/08)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**(d) Choose one County where Action Arose.**

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States District Courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Refiled (3) Attach copy of Order for Dismissal of Previous case. Also complete VI.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.** **Related/Refiled Cases.** This section of the JS 44 is used to reference related pending cases or re-filed cases. Insert the docket numbers and the corresponding judges name for such cases.

**VII.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VIII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| CARINGONDEMAND, LLC and AVIOR SCIENCES, LLC,  )<br><br>)<br>)<br>)<br>*Plaintiff(s)*  )<br>v.  )<br>VENTIVE LLC,  )<br>)<br>)<br>)<br>*Defendant(s)*  ) | Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Ventive, LLC
121 N. 9th Street, STE 101,
Boise, Idaho 83702

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Davidoff Law Firm, PLLC,
Jonathan Marc Davidoff, Esq.
228 East 45th Street, Suite 1700
New York, New York 10017
Email: Jonathan@davidofflawfirm.com
Secondary Email: Efile@davidofflawfirm.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____ 02/21/2018 _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

□ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

□ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

□ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

□ I returned the summons unexecuted because _____ ; or

□ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: